UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| INTERNATIONAL MARINE, L.L.C. and INTERNATIONAL OFFSHORE SERVICES, L.L.C.<br><br>versus<br><br>INTEGRITY FISHERIES, INC. | CIVIL ACTION NO. _____<br><br>DIVISION ___   SECTION ___<br><br>JUDGE<br><br>MAGISTRATE<br><br>**Admiralty – Rule 9(h)** |
|---|---|

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs International Marine, L.L.C. ("IM") and International Offshore Services, L.L.C. ("IOS") (sometimes collectively referred to as "International"), and for their Complaint, aver and allege as follows:

### Jurisdiction and Venue

1.

Jurisdiction is proper in this Court as it involves a matter arising under the Court's admiralty or maritime jurisdiction. Plaintiffs specifically invoke Rule 9(h) of the Federal Rules of Civil Procedure and designate this as a matter brought on the admiralty side of the Court.

2.

Venue is proper in this Honorable Court as this matter arises out of an incident in navigable waters above the Outer Continental Shelf off the coast of Louisiana.

## Parties

3.

At all times pertinent, Plaintiff IM was the owner and operator of the M/V INTL THUNDER, an offshore supply vessel.

4.

At all times pertinent, Plaintiff IOS was the sole owner of Plaintiff IM.

5.

Made Defendant herein is:

A. Integrity Fisheries, Inc. ("Integrity"), on information and belief an Alabama corporation licensed to do and doing business within, and subject to the jurisdiction of, this Honorable Court, and which may be served through its President and Registered Agent for Service of Process, Charles V. Rodriguez, Sr. 11690 Hillside Drive, Irvington, Alabama, 36544.

## Factual Background

6.

Prior to November 2, 2012, International was retained by Tesla Offshore, L.L.C. ("Tesla") to provide the M/V INTL THUNDER and her crew to work as directed by Tesla performing sonar survey work in the Gulf of Mexico.

7.

In furtherance of Tesla's sonar survey work, Tesla placed Tesla personnel and equipment aboard the M/V INTL THUNDER.  Tesla personnel used the M/V INTL THUNDER to deploy a "sonar fish" on a cable supplied by Tesla in order to obtain sonar scans of the ocean floor.

8.

On best information and belief, the sonar survey work being performed by Tesla required the use of a second vessel in addition to the M/V INTL THUNDER, referred to as a "chase vessel," that followed the M/V INTL THUNDER and stayed atop the Tesla sonar fish.  Tesla also placed Tesla personnel and equipment aboard the chase vessel.

9.

From the inception of the Tesla sonar survey operations until approximately October 31, 2012, the chase vessel working for Tesla in conjunction with the M/V INTL THUNDER was the F/V INTEGRITY, on best information and belief a vessel that at all times pertinent was owned, operated, manned, and victualed by Defendant Integrity.

10.

The chase vessel was at all times pertinent integral to the Tesla sonar survey operations and Tesla could not conduct its sonar survey operations without the chase vessel.

**Substituting the F/V LADY JOANNA for the F/V INTEGRITY –
Integrity's Insurable and/or Ownership Interest in the F/V LADY JOANNA**

11.

On or about October 31, 2012, the F/V INTEGRITY suffered a mechanical or engine failure in the course of performing the Tesla sonar survey operations.

12.

On best information and belief, following the mechanical or engine failure aboard the F/V INTEGRITY, Tesla requested Integrity to provide an alternate or substitute vessel to continue in the role of chase vessel for the Tesla seismic survey operations.

13.

On information and belief, Integrity fulfilled Tesla's request for a substitute chase vessel by providing the F/V LADY JOANNA.

14.

There was at that time, and at all times pertinent, in effect a New York Marine and General Insurance Company ("NYMAGIC") Bumbershoot Policy, Policy No. ML101997/12, issued to Integrity.

15.

At the time of the mechanical or engine failure aboard the F/V INTEGRITY, the only vessel identified on the Schedule of Vessels under the aforementioned NYMAGIC Bumbershoot Policy was the F/V INTEGRITY.

16.

On or about November 1, 2012, Endorsement No. 20 to the NYMAGIC Bumbershoot Policy was issued at the request of Integrity.  The aforesaid Endorsement 20 removed the F/V INTEGRITY from the Schedule of Vessels and replaced it with the F/V LADY JOANNA, effective November 1, 2012.

17.

Endorsement 20 to the NYMAGIC Bumbershoot Policy was procured at the direction of Integrity and/or its President, Charles V. Rodriguez, Sr.

18.

On best information and belief, both Integrity and Sea Eagle are under the sole direction and control of Charles V. Rodriguez, Sr., who was at all times pertinent the President of both Integrity and Sea Eagle.

19.

On best information and belief, and based on the substitution of the F/V LADY JOANNA for the F/V INTEGRITY on the NYMAGIC Bumbershoot Policy issued to Integrity, Integrity has a sufficient insurable interest and/or ownership interest in the F/V LADY JOANNA to make Integrity responsible and liable for the acts and/or omissions of the F/V LADY JOANNA and her crew, inasmuch as Integrity directed the F/V LADY JOANNA to replace the F/V INTEGRITY in the Tesla operations and had authority to obtain insurance on the F/V LADY JOANNA under the NYMAGIC Bumbershoot Policy.

20.

In the alternative, on best information and belief, Integrity and Sea Eagle are so closely related as to be alter ego entities and/or justify piercing of the corporate veil.

21.

In the alternative, on best information and belief, the insurers of Integrity consented to make Sea Eagle an insured under the policies issued to Integrity and/or to assume liability for the acts and/or omissions of the F/V LADY JOANNA.

**The Identical Master Service Agreements between
Tesla and Integrity and Tesla and Sea Eagle**

22.

On or about February 14, 2011, Tesla entered into identical Master Service Agreements (the "MSA's") as "Company" with Integrity and Sea Eagle as "Contractor". A true and correct copy of the MSA's is attached hereto as Exhibits "A" and "B". Charles V. Rodriguez, Sr., as President, executed the Tesla-Integrity MSA on behalf of Integrity as its President and the Tesla-Sea Eagle MSA on behalf of Sea Eagle as its President.

23.

Section 9(b)(ii) of the MSA's defines the "Company Group" to include not only Tesla but also its contractors.

24.

As contractors of Tesla, both IOS and IM are members of the "Company Group" as defined in the MSA's.

25.

Section 9(d)(i) of the MSA's sets forth the obligation of Integrity and Sea Eagle to defend and indemnify the members of the "Company Group", including IOS and IM, with respect to third-party property damage, and specifically requires Integrity and Sea Eagle to

> PROTECT, DEFEND, INDEMNIFY, AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST, ANY AND ALL CLAIMS DIRECTLY OR INDIRECTLY ARISING OUT OF ANY . . . DAMAGES SUSTAINED BY THIRD PARTY PROPERTY OWNERS ARISING OUT OF OR RELATED IN ANY WAY TO THE OPERATION OF ANY VESSEL OWNED, OPERATED, LEASED, AND/OR CHARTERED BY CONTRACTOR OR ANY SUBCONTRACTOR OF CONTRACTOR TO PERFORM WORK UNDER THIS AGREEMENT[.]

26.

Section 9(a) of the MSA provides that the defense and indemnity obligations of Integrity and Sea Eagle as "Contractor" under the MSA's apply regardless of the "SOLE, JOINT, OR CONCURRENT NEGLIGENCE OF ANY INDEMNITEE, WHETHER ACTIVE OR PASSIVE (INCLUDING UNSEAWORTHINESS)[.]"

27.

Section 9(g) of the MSA's requires Integrity and Sea Eagle to support their indemnity obligations to the members of the "Company Group" by procuring certain policies of insurance. Section 11(b) of the MSA's requires that members of the "Company Group" be named as

additional insureds under the applicable Integrity and Sea Eagle policies, with such coverage to be primary, with waiver of subrogation in favor of "Company Group", and with all deductibles for the account of Integrity and Sea Eagle.

### The Alleged Mooring Line Incident

28.

On or about November 2, 2012, the M/V INTL THUNDER and the F/V LADY JOANNA were working for Tesla performing a sonar survey in Mississippi Canyon Blocks 214 & 215.  On the morning of November 2, 2012, Tesla personnel experienced a problem with the fish and directed both vessels to head south while Tesla made repairs to the fish.  Following the completion of repairs, Tesla personnel directed the vessels to head back north toward the survey grid in Mississippi Canyon Blocks 214 & 215.

29.

As the vessels headed back north toward the survey grid, a Tesla crew aboard International's M/V INTL THUNDER deployed a Tesla sonar fish in the vicinity of Mississippi Canyon Block 391.

30.

At that time, the F/V LADY JOANNA was acting as the "chase vessel" at the direction of Tesla and following the sonar fish that Tesla had deployed from the M/V INTL THUNDER.

31.

It has been alleged that, as the aforementioned vessels were engaged in the aforementioned activities, the Tesla sonar fish struck a drilling rig mooring line owned by Shell Offshore Inc. ("Shell"), allegedly causing Shell to suffer damages, for which International has denied responsibility.

32.

As a result of the aforementioned alleged incident, Shell has sought to recover damages from International in the matter entitled *Shell Offshore, Inc. v. Tesla Offshore, Inc., et al.*, United States District Court for the Eastern District of Louisiana, Docket No. 2:13-cv-06278-LMA-SS, which matter currently is pending and unresolved.

**As and For a First Cause of Action against Sea Eagle and Integrity –
Contractual Defense and Indemnity and Additional Insured Coverage**

33.

All preceding paragraphs are re-alleged as if set forth herein *in extenso*.

34.

At all times pertinent, the MSA between Sea Eagle and Tesla and the MSA between Integrity and Tesla were in full force and effect.

35.

At all times pertinent, IOS and IM were contractors of Tesla and members of the "Company Group" as defined under the MSA's.

36.

The claims asserted by Shell against IOS and IM herein fall within the scope of Sea Eagle's and/or Integrity's defense, indemnity, and hold harmless obligations under the MSA's.

37.

IOS and IM are third-party beneficiaries of the MSA's.

38.

IOS and IM are entitled to be defended, indemnified, and held harmless by Sea Eagle and/or Integrity pursuant to the terms of the MSA's.

39.

Pursuant to the MSA's, Sea Eagle and Integrity were required to procure and maintain certain insurance coverage in support of the indemnity obligations to the "Company Group."

40.

Pursuant to the MSA's, Sea Eagle and Integrity were required to procure and maintain certain insurance coverage, with members of the "Company Group" to be named as additional insureds under the applicable policies, with such coverage to be primary, with waiver of subrogation in favor of "Company Group", and with all deductibles for the account of Sea Eagle/Integrity.

41.

Pursuant to the MSA's, IOS and IM were at all times pertinent members of the "Company Group" and entitled to all insurance coverage set forth under the MSA's.

42.

Because the chase vessel – whether the F/V INTEGRITY or the F/V LADY JOANNA – was integral to the Tesla survey operations, the alleged mooring line incident arises out of the work performed and services provided by Integrity and/or Sea Eagle.

43.

Based on the substitution of the F/V LADY JOANNA for the F/V INTEGRITY on the NYMAGIC Bumbershoot Policy issued to Integrity, Integrity at all times pertinent had a sufficient insurable interest and/or ownership interest in the F/V LADY JOANNA to make Integrity responsible and liable for the acts and/or omissions of the F/V LADY JOANNA and her crew.

44.

Alternately, Integrity controlled and/or directed the operations of Sea Eagle, the owner and operator of the F/V LADY JOANNA.

45.

Alternately, Integrity and Sea Eagle are so closely related as to be alter ego entities and/or justify piercing of the corporate veil.

46.

Alternately, the insurers of Integrity consented to make Sea Eagle an insured under the policies issued to Integrity and/or to assume liability for the acts and/or omissions of the F/V LADY JOANNA.

47.

Based on all of the foregoing, International is entitled to defense, indemnity, and additional insured coverage from Integrity pursuant to either the Tesla-Integrity MSA or the Tesla-Sea Eagle MSA, and IOS and IM and pray that the Court, after due proceedings are had, enter judgment in their favor so finding.

## Conclusion and Prayer for Relief

48.

WHEREFORE, Plaintiffs IOS and IM pray that, after due proceedings are had, there be judgment in their favor and against the Defendant as follows:

1. Requiring Integrity to fully defend, indemnify, and hold harmless, and provide additional insured coverage to, IOS and IM as to all claims asserted in the matter entitled *Shell Offshore, Inc. v. Tesla Offshore, Inc., et al.*, United States District Court for the Eastern District of Louisiana, Docket No. 2:13-cv-06278-LMA-SS; and

2.For all other relief which may be proper in the premises.

                Respectfully submitted:

                s/Joseph E. Lee III
                Miles P. Clements, T.A. (4184)
                Joseph E. Lee III (26968)
                Brandon K. Thibodeaux (32725)
                Frilot L.L.C.
                3700 Energy Centre
                1100 Poydras Street
                New Orleans, Louisiana  70163-3700
                Telephone:(504) 599-8000
                Facsimile:(504) 599-8100
                E-Mail:mclements@frilot.com
                        jlee@frilot.com
                        bthibodeaux@frilot.com
                Counsel for Plaintiffs International Offshore Services, L.L.C. and International Marine, L.L.C.

**SUMMONS TO BE ISSUED TO:**
Integrity Fisheries, Inc.
Through its President and Registered Agent for Service of Process:
Charles V. Rodriguez, Sr.
11690 Hillside Drive
Irvington, Alabama  36544

785859