## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**INTERNATIONAL MARINE, LLC, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                                                      **NO. 15-1446**

**INTEGRITY FISHERIES, INC.**                                      **SECTION I**

## ORDER AND REASONS

The Court has pending before it a motion[1] for summary judgment filed by defendant, Integrity Fisheries, Inc. ("Integrity"), a motion[2] for summary judgment filed by defendant/third-party defendant, Sea Eagle Fisheries, Inc. ("Sea Eagle"), and cross-motions for summary judgment with respect to both Integrity and Sea Eagle filed by plaintiffs, International Marine, LLC and International Offshore Services, LLC (collectively, "International"),[3] and intervenor, Tesla Offshore, L.L.C. ("Tesla").[4] For the following reasons, Integrity's and Sea Eagle's motions are granted and International's and Tesla's motions are denied.

## BACKGROUND

Understanding the above-captioned matter first requires a brief accounting of the facts and history of Civil Action No. 13-6278. *Shell Offshore Inc. v. Tesla Offshore, L.L.C., et al.* ("*Shell v. Tesla*").[5] *Shell v. Tesla* arose out of an incident involving a sonar towfish owned by Tesla and being

---

[1]R. Doc. No. 66.
[2]R. Doc. No. 120.
[3]R. Doc. Nos. 89, 121.
[4]R. Doc. Nos. 86, 116.
[5]The facts recited below are not materially disputed by any party. Furthermore, no party has suggested that additional discovery is required as to any material facts. International suggests that additionally discovery "may be appropriate" to clarify the ownership and control relationships between Integrity and Sea Eagle. R. Doc. No. 87, at 2. However, whatever uncertainties exist as to

1

towed by the M/V INTERNATIONAL THUNDER, a vessel owned by International and time-chartered to Tesla for the purpose of conducting an underwater archeological sonar survey. On November 2, 2012, the cable pulling the towfish behind the M/V INTERNATIONAL THUNDER damaged a mooring line securing the M/V DEEPWATER NAUTILUS, a Mobile Offshore Drilling Unit ("MODU") drilling an oil well for Shell Offshore, Inc. ("Shell"). Shell filed a lawsuit against Tesla and International and a jury returned a verdict in Shell's favor in the amount of $9,041,552, allocating 75% fault to Tesla and 25% fault to International.[6]

A second vessel was present at the November 2, 2012 incident: the F/V LADY JOANNA, a fishing vessel owned by Sea Eagle. Tesla hired the F/V LADY JOANNA, pursuant to a Master Service Agreement ("MSA"), which obligated the F/V LADY JOANNA to serve as the "chase vessel" for the sonar survey operation, requiring it to stay above the towfish and receive transmissions from it. Shell did not assert any claims against Sea Eagle in *Shell v. Tesla*, but Tesla and International did, alleging tort claims as well as claims for defense and indemnity pursuant to the MSA. Certain claims against Sea Eagle were settled and others were severed in advance of the trial in *Shell v. Tesla*. The severed claims have been reasserted by International and Tesla in the above-captioned matter.[7]

International as plaintiffs and Tesla as intervenor assert claims against Integrity in its alleged capacity as owner and/or operator of either the F/V LADY JOANNA or the F/V INTEGRITY,[8] the

---

those issues are immaterial to the interpretation and application of the identical Master Service Agreements.

[6] *Shell v. Tesla*, No. 13-6278, R. Doc. No. 295-4; R. Doc. No. 298.

[7] R. Doc. Nos. 108, 109.

[8] For the reasons set forth below, indemnity is not available because Shell's claims against Tesla and International did not arise out of the operation of the F/V LADY JOANNA. Accordingly, any potential factual disputes relating to whether Integrity was the owner or operator of the F/V

vessel initially chartered by Tesla pursuant to a MSA to serve as the chase vessel, but later replaced by the F/V LADY JOANNA as a result of mechanical problems. International and Tesla also assert various claims against insurance companies predicated on the viability of claims against Integrity and/or Sea Eagle.

In the present posture of this case, International and Tesla assert analogous claims against Sea Eagle and Integrity, each of which contracted with Tesla pursuant to substantively identical MSAs. International, Tesla, Integrity, and Sea Eagle have all filed motions for summary judgment with respect to the availability of indemnity pursuant to the MSAs. For convenience, the Court will analyze the simplest permutation of the claims: whether Sea Eagle owes Tesla indemnity pursuant to the terms of the Tesla-Sea Eagle MSA.[9] Such analysis applies equally to any potential recovery by Tesla from Integrity pursuant to the Tesla-Integrity MSA, as well as to International's parallel claims for indemnity as to both Sea Eagle and Integrity pursuant to either MSA.

The Tesla-Sea Eagle MSA contains the following indemnification provision defining Sea Eagle's obligations as "Contractor" to Tesla (and potentially International) as the "Company Group"[10]:

---

LADY JOANNA or the corporate relationship between Integrity and Sea Eagle are immaterial to resolution of the pending summary judgment motions.

[9]Integrity filed a motion for summary judgment first. R. Doc. No. 66. After it was made a party to this matter, Sea Eagle filed a "me-too" motion for summary judgment incorporating by reference Integrity's "memorandum in support of its motion for summary judgment, as if same were fully set forth *in extenso*." R. Doc. No. 120-1, at 1. Accordingly, although the Court analyzes the Tesla-Sea Eagle MSA, the Court analyzes arguments articulated by Integrity.

[10]"Company Group" is defined to "include Company [*i.e.*, Tesla], its parent, subsidiaries, and affiliates, and its and their joint owners, partners, joint ventures, contractors, and subcontractors (other than Contractor and its contractors and subcontractors), and entities with whom Company has entered a sharing agreement or for whom Company is performing services, and the owners, shareholders, directors, officers, employees, agents, representatives, and invitees of all the foregoing." R. Doc. No. 1-3, at 9. International alleges that it falls within this definition of

      d.        <u>Property</u>
            (i)      <u>Contractor's Liability.</u> Regardless of cause, Contractor shall be liable for, and hereby releases Company Group from all liability for, and shall protect, defend, indemnify, and hold Company Group harmless from and against, any and all claims directly or indirectly arising out of any loss, harm, infringement, destruction, or damage of Contractor Group's property, equipment, or instrument and damages sustained by third party property owners arising out of or related in any way to the operation of any vessel owned, operated, leased and/or chartered by Contractor or any subcontractor of Contractor to perform work under this agreement except to the extent such loss, harm, infringement, destruction, or damages is caused by the indemnitee's gross negligence or willful misconduct.[11]

In summary, Sea Eagle contracted to defend and indemnify Tesla "from and against, any and all claims directly or indirectly arising out of any loss, harm, infringement, destruction, or . . . damages sustained by third party property owners arising out of or related in any way to the operation of any vessel owned, operated, leased, and/or chartered by [Sea Eagle] . . . to perform work under this agreement."

    The parties also point out other provisions of the MSAs. Integrity emphasizes that the contract was "for the performance of work and/or for the provision of services," that the MSA "covers only Services to be performed within the United States of America, the territorial waters of the United States of America, and the Gulf of Mexico," and that the MSA requires Sea Eagle to "maintain . . . sufficient insurance . . . to protect [Sea Eagle] and [Tesla] from third party claims arising out of or connected with the performance of Service hereunder."[12] Tesla and International

---

"Company Group." R. Doc. No. 1, at 6 ("As contractors of Tesla, both IOS and IM are members of the 'Company Group' as defined in the MSA's."). Whether International is a member of the "Company Group" and, therefore, a beneficiary of this indemnity provision, is immaterial to resolution of the pending motions for summary judgment.
    [11]R. Doc. No. 1-3, at 10 (emphasis omitted).
    [12]R. Doc. No. 66-7, at 5-7 (citing R. Doc. No. 1-3, at 1, 2, 12).

4

emphasize that the defense and indemnity provisions apply "regardless of cause including who may be at fault or otherwise responsible under any contract, statute, rule, or theory of law, and including without limitation, the sole, joint, or concurrent negligence of any indemnitee, whether active or passive, [and] strict liability (including unseaworthiness) . . . ."[13]

## LAW AND ANALYSIS

### A.    Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

---

[13]R. Doc. No. 1-3, at 8.

Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.    Discussion**

The dispositive question is simple: Do the claims for damages brought by Shell against Tesla and International constitute claims "arising out of or related in any way to the operation of any vessel owned, operated, leased and/or chartered by [Sea Eagle] to perform work under this agreement"?[14] Because the incident and the resulting claims arose out of the operation of the M/V INTERNATIONAL THUNDER which was towing the sonar towfish, Integrity contends that such claims self-evidently did not arise out of the operation of the F/V LADY JOANNA. International and Tesla contend that the MSA indemnity provision should be read broadly such that the M/V DEEPWATER NAUTILUS incident "arose out of" the operation of the F/V LADY JOANNA because Tesla could not have conducted the sonar survey from the M/V INTERNATIONAL THUNDER without the M/V LADY JOANNA as the chase vehicle.

The issue before this Court relates to its interpretation of a maritime contract in light of undisputed facts. The Court can, therefore, resolve this issue through motions for summary judgment. *See, e.g.*, *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir. 1981) (affirming grant of summary judgment on the basis that "as a matter of law, the indemnity clause" in a maritime

---

[14]R. Doc. No. 1-3, at 10.

contract did not apply).

The parties agree that interpretation of the Tesla-Sea Eagle MSA is governed by federal maritime law.[15] *See Corbitt*, 654 F.2d at 332 ("The interpretation of an indemnity clause in a maritime contract is ordinarily governed by federal maritime law rather than by state law."). "Express contractual indemnity agreements generally are enforceable under maritime law" and are governed by the "usual rules of contractual interpretation." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992). "A maritime contract containing an indemnity agreement should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Id.* (citation and alteration omitted).

"A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt*, 654 F.2d at 333. Accordingly, the Fifth Circuit has "refused to extend the reach of an indemnity provision beyond the intent of the parties to the agreement where the undertaking urged would create 'an unusual and surprising obligation.'" *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986) (quoting *Corbitt*, 654 F.2d at 333)).

The parties rely primarily on two Fifth Circuit opinions. On the one hand, International and Tesla rely heavily on *Fontenot v. Mesa Petroleum Co.*, in which the Fifth Circuit noted that it has "broadly construed language identical or similar to . . . 'arising in connection herewith'" as used in indemnity provisions in maritime contracts. *See* 791 F.2d 1207, 1214 (5th Cir. 1986). On the other

---

[15]R. Doc. No. 66-7, at 8; R. Doc. No. 85-1, at 5; R. Doc. No. 87, at 9.

hand, Integrity and Sea Eagle rely on *Marathon Pipe Line*, in which the Fifth Circuit held that the

phrase "occurring in connection with, arising out of, or in any wise incident or related to" contracted

services, "while broad, cannot be read in a vacuum to apply to any situation for which a colorable

argument could be made" that a claim was related to the contracted services. *See* 806 F.2d at 589,

591.[16]

The Court also notes the Fifth Circuit's holding in *Smith v. Tenneco Oil Co.*, in which a

seaman was injured while being lowered by a crane from an oil platform owned by Tenneco to a

vessel chartered by Tenneco from John E. Graham & Sons ("Graham"). *See* 803 F.2d 1386, 1387-88

(5th Cir. 1986). The time-charter agreement obligated Graham to indemnify Tenneco for "any claim

that 'arises out of or is incident to *performance' of the charter agreement*." *Id.* at 1388 (emphasis

added). The Fifth Circuit found that "performance of the charter in the present case involves

---

[16]In *Marathon Pipe Line*, TETCO contracted with Sea-Con to perform construction work in the vicinity of a fixed oil platform in the Gulf of Mexico, and TETCO separately contracted with Oceanonics to locate and mark submerged natural gas pipelines in the vicinity of the fixed platform. *See* 806 F.2d at 587. Oceanonics agreed to indemnify TETCO and its contractors and subcontractors from claims "occurring in connection with, arising out of, or in any wise incident or related to" Oceanonics' performance of its contract. *Id.* at 590-91. After Oceanonics marked the submerged pipeline, Sea Level (a Sea-Con subcontractor) anchored the M/V SEA LEVEL II and damaged a pipeline. *See id.* at 587-88.

Litigation ensued and Sea Level claimed indemnification from Oceanonics pursuant to the TETCO/Oceanonics contract, contending "that the damage to Marathon's pipeline occurred in connection with, arose out of, or was related or incident to services performed by Oceanonics under its contract with TETCO." *Id.* at 591. The district court disagreed and the Fifth Circuit affirmed, rejecting an expansive reading of the indemnity provision and concluding that "[Sea Level's] view of the contract . . . would have us read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on TETCO's pipeline." *Id.* Accordingly, the Fifth Circuit "declined to characterize" the property damage as arising out of Oceanonics' performance of its contract with Tetco "in the absence of any indication that TETCO sought and Oceanonics agreed to such an unusual undertaking." *Id.* Notably, the Fifth Circuit expressly declined to *Fontenot*'s broad reading of "occurring in connection with" to the facts of *Marathon Pipe Line*. *See id.* at 591.

possession, navigation, management and operation of the vessel" and perhaps "other activities, [but] it does not involve those aspects of operation of the crane on the drilling platform which are independent of the operation of the" vessel. *Id.* at 1388.  Accordingly, the indemnity provision was not triggered because although the injured seaman was being lowered onto the vessel, as a matter of law his injury was "not directly or indirectly connected with the operation of the vessel." *Id.* at 1388-89. This was the case even though indemnification was owed regardless of fault because "the specific inclusion of third-party fault does not broaden the basic coverage of the indemnity agreement to events that do not arise out of or are not incident to the performance of the charter agreement." *Id.* at 1389.[17]

With *Fontenot*, *Marathon Pipe Line*, and *Tenneco Oil* as guidance, the Court must construe the MSA "to cover all losses, damages, or liabilities which reasonably appear to have been within

---

[17]*Tenneco Oil* relied on the Fifth Circuit's earlier opinion in *Lanasse v. Travelers Insurance Co.*, which likewise found that an accident arising out of a platform crane did not trigger indemnity for claims arising out of the operation of the vessel from which cargo was being removed. 450 F.2d 580, 583 (5th Cir. 1971) ("As broad as those terms are to comprehend injuries caused by the operation of the vessel in a practical sense, they do not comprehend an occurrence in which the vessel's sole contribution is to be there as the carrier from which the cargo is being removed.").
Tesla and International cites several cases which distinguished *Lanasse* on the basis of different facts and different contractual indemnity language. R. Doc. No. 116-1, at 6-8; R. Doc. No. 121-1, at 19. In particular, they cite *Gaspard v. Offshore Crane & Equipment*, in which the Fifth Circuit held that the vessel charterer had expressly contracted around the holding in *Lanasse* by going "out of its way to include 'loading or unloading' in the indemnification agreement." *See* 106 F.3d 1232, 1236 (5th Cir. 1997). But *Gaspard* is inapposite to these facts and this contractual language; although the MSAs in this case do expressly include indemnity for "claims arising out of ingress, egress, loading and unloading of personnel or cargo," R. Doc. No. 1-3, at 8, Shell's claims in no way arose out of "ingress, egress, loading and unloading of personnel or cargo." International and Tesla do not cite any other language in the MSAs clearly expressing an intent that Sea Eagle (or Integrity) indemnify them for the claims asserted by Shell based on the M/V DEEPWATER NAUTILUS incident.
The remaining cases cited by Tesla are similarly distinguishable based on the different underlying facts and indemnity language at issue. *See Hellaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir. 1983); *Lefort v. C&E Boat Rental*, 795 So. 2d 359 (La. App. 1 Cir. 2001).

the contemplation of the parties," but not " to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt*, 654 F.2d at 333. The Court should not extend "the reach of an indemnity provision beyond the intent of the parties to the agreement where the undertaking urged would create 'an unusual and surprising obligation.'" *Marathon Pipe Line*, 806 F.2d at 591 (quoting *Corbitt*, 654 F.2d at 333).

Having reviewed the briefing, the record, and the applicable law, the Court finds as a matter of law that Integrity's and Sea Eagle's application of the language of the MSA to the facts of this case is correct and that neither owes defense or indemnity to Tesla or International for the M/V DEEPWATER NAUTILUS incident. The MSA is a contract for the F/V LADY JOANNA to operate as a chase vessel, navigating above Tesla's sonar towfish while following the M/V INTERNATIONAL THUNDER. The plain language of the MSA obligates Sea Eagle to indemnify Tesla for "losses arising out of *the operation of*" the F/V LADY JOANNA. The M/V DEEPWATER NAUTILUS incident did not "arise out of the operation" of the F/V LADY JOANNA in anything but the most attenuated sense; the F/V LADY JOANNA was simply there as the chase vessel staying above the sonar towfish as it was towed by the M/V INTERNATIONAL THUNDER in the course of Tesla's sonar operation.[18] Accordingly, pursuant to the only reasonable reading of the plain

---

[18]Attempting to establish a connection to the operation of the F/V LADY JOANNA, International and Tesla mention that the captain of the F/V LADY JOANNA noticed the proximity of the M/V INTERNATIONAL THUNDER to the M/V DEEPWATER NAUTILUS and alerted Tesla personnel. R. Doc. No. 85-1, at 5-6. R. Doc. No. 87, at 12. But neither International nor Tesla articulate how this act was a contractual obligation, as opposed to a gratuitous action, of Sea Eagle pursuant to the MSA, or how merely witnessing the M/V DEEPWATER NAUTILUS incident about to occur made the incident "arise out of" the operation of the F/V LADY JOANNA. *See Marathon Pipe Line*, 806 F.2d at 590-91.

language of the MSA and on these undisputed facts, Sea Eagle does not owe indemnity to International and Tesla for Shell's damages. The Court rejects International's and Tesla's arguments to the contrary.

First, to hold that the M/V DEEPWATER NAUTILUS incident "arose out of" the operation of the F/V LADY JOANNA would "extend the reach of [the] indemnity provision beyond the intent of the parties to the agreement" and would "create 'an unusual and surprising obligation.'" *Marathon Pipe Line Co.*, 806 F.2d at 591 (quoting *Corbitt*, 654 F.2d at 333). Sea Eagle contracted to provide a chase vessel to perform one role in the broader sonar operation; it would be "an unusual and surprising obligation" if Sea Eagle thereby agreed to indemnify Tesla for every possible third-party claim resulting from other parts of the sonar survey operation which Sea Eagle had not contracted to perform. *See id.* at 591.

Second, in this particular case the Court declines to find *Fontenot* to be controlling or to require an expansive reading of "arising out of" as International and Tesla contend.[19] *Fontenot* and its predecessors addressed personal injury claims and a specific type of reciprocal indemnity agreement intended "to divide the responsibility for personal injury/death among the many employers and contractors according to the identity of the injured employee rather than according to which party's fault or negligence caused the injury." 791 F.2d at 1216. Those concerns are absent here. Rather, *Marathon Pipe Line* and *Tenneco* involved more analogous provisions for indemnity based on claims arising out of the contracted services of a vessel, and both of those cases expressly declined to apply *Fontenot* and instead imposed reasonable limits on what damages "arise out of" the performance of a contract. *See Marathon Pipe Line*, 806 F.2d at 591; *Tenneco Oil*, 803 F.2d at

---

[19]*See* R. Doc. No. 85-1, at 5; R. Doc. No. 87, at 9-10.

1389. In this particular case the Court declines to rely on *Fontenot* as controlling the interpretation of "arising out of."[20]

Third, the M/V DEEPWATER NAUTILUS incident is not "related to" the operation of the F/V LADY JOANNA merely because the F/V LADY JOANNA was "necessary" or "integral" to the entire sonar survey operation in the sense that Tesla could not have conducted the survey but for the presence of a chase vessel.[21] *Marathon Pipe Line* and *Tenneco Oil* demonstrate why such arguments must fail. In *Marathon Pipe Line*, the pipeline-marking vessel was an "integral" part of TETCO's construction project in the vicinity of underwater pipelines. Likewise, in *Tenneco Oil*, Tenneco self-evidently could not have lowered a seaman from its platform onto the chartered vessel "but for" the presence of that vessel. Nonetheless, in both cases the Fifth Circuit rejected the conclusion that the accidents "arose out of" the operation of the respective vessels. The tenuous causal connection urged by International and Tesla in this matter is at best the same type of merely "colorable argument" that does not suffice. *See Marathon Pipe Line*. 806 F.2d at 591.

Fourth, International and Tesla appear to suggest that the MSA should be read to establish indemnification because the MSA expressly obligates Sea Eagle to indemnify Tesla for Tesla's own fault.[22] But as the Fifth Circuit held in *Tenneco Oil*, "the specific inclusion of third-party fault does not broaden the basic coverage of the indemnity agreement to events that do not arise out of or are not incident to the performance of the charter agreement." 803 F.2d at 1389. Put another way,

---

[20]The Court does not find two unpublished lower court opinions cited by International to be apposite. *In re Horizon Vessels, Inc.*, No. 03-3280, 2005 WL 6935854 (S.D. Tex. Nov. 18, 2005) and *Tinoco v. Marine Systems, Inc.*, No. 07-6845, 2009 WL 1405029 (E.D. La. May 19, 2009), both addressed different relationships between facts and indemnity provisions in contracts for different types of services, and neither is persuasive with respect to the issues presented in this case.

[21]*See* R. Doc. No. 85-1, at 5-6; R. Doc. No. 87, at 4-7, 14.

[22]*See* R. Doc. No. 85-1, at 8. R. Doc. No. 87, at 14.

although Sea Eagle agreed to indemnify for certain claims regardless of fault (except for gross negligence or willful misconduct), such indemnification is still limited to claims "arising out of or related to" the operation of the F/V LADY JOANNA.

In sum, the Court concludes that Shell's claims for damages based on the M/V DEEPWATER NAUTILUS incident did not arise out of, and are not related to, the operation of the F/V LADY JOANNA. As a result, pursuant to the plain language of the Tesla-Sea Eagle MSA, Sea Eagle does not owe Tesla a defense or indemnity for those claims.[23]

This conclusion necessarily requires summary judgment in favor of Sea Eagle and Integrity and against Tesla and International as to all possible permutations. With respect to claims against Integrity, because Shell's claims did not arise out of and are not related to the operation of the F/V LADY JOANNA, *a fortiori* they did not arise out of and are not related to the operation of the F/V INTEGRITY, a vessel that was not even on the scene. Consequently, the Integrity-Sea Eagle MSA does not give rise to indemnification.

With respect to International, the Court concludes that neither Sea Eagle nor Integrity owes indemnity to the "Company Group." Accordingly, assuming for the sake of argument that International is included in the definition of "Company Group," it is not entitled to indemnity

---

[23]Tesla cursorily asserts that "the duty to defend is broader than the indemnity obligation." R. Doc. No. 85-1, at 8-9. The single district court case cited by Tesla held that the allegations in a complaint fell "within the indemnity and defense language of the time charter agreement," which obligated an indemnifying party to defend against those claims regardless of whether indemnity would ultimately be owed. *See Clement v. Marathon Oil Co.*, 724 F. Supp. 431, 433 (E.D. La. 1989). Tesla's underdeveloped argument fails because Shell's allegations against Tesla and International (which Tesla omits) did not mention the M/V LADY JOANNA or otherwise misstate the undisputed facts set forth above in any fashion that could possibly suggest the applicability of the defense and indemnity provision in the Tesla-Sea Eagle MSA. *See Shell v. Tesla*, No. 13-6278, R. Doc. No. 1.

pursuant to either MSA for the same reasons that Tesla is not.[24] Consequently, all claims by International and Tesla against Integrity and Sea Eagle fail as a matter of law.

## C.    Corollary Effects of the Court's Holding

As Integrity and Sea Eagle point out, the claims by International and Tesla for insurance coverage are self-evidently predicated on insurance Sea Eagle was required to procure pursuant to the MSA "to protect [Sea Eagle] and [Tesla] from third party claims arising out of or connected with the performance of Services" under the MSA.[25] Because, for the reasons set forth above, there were no claims asserted against Tesla "arising out of or connected with [Sea Eagle's] performance of Services" under the MSA, claims based on the dependent insurance obligations must fail as well.[26] Likewise, the claims asserted by International in its proposed amended complaint are futile.[27] *See, e.g., Adams Family Trust v. John Hancock Life Ins. Co.*, 424 F. App'x 377 (5th Cir. 2011) (affirming

---

[24]Tesla argues that it "is owed both a defense and indemnity from Sea Eagle regardless of whether or not International, as a member of the 'Company Group,' is so entitled." R. Doc. No. 116-1, at 10. The Court disagrees. Such argument finds no basis in the language of the MSAs which state that indemnity is available, if at all, to the "Company Group" in general. Furthermore, Tesla's characterization of *Marathon Pipe Line* as depending on whether it was the customer or another subcontractor which sought indemnity finds no support in that opinion which did not address indemnity sought by the prime contractor at all. *See* 806 F.2d at 587-88.

[25]R. Doc. No. 66-7, at 12; *see also* R. Doc. No. 1-3, at 12 (requiring Sea Eagle to "procure and maintain . . . sufficient insurance . . . to protect Contractor and Company from third party claims *arising out of or connect with the performance of Services hereunder*") (emphasis added); R. Doc. No. 108, at 4 ("Integrity and Sea Eagle were also obligated under their MSAs to obtain and provide insurance to Tesla to cover *their contractual liability and indemnity obligations* . . . ."); R. Doc. No. 109, at 4 ("Section 9(g) of the MSA's requires Integrity and Sea Eagle to support their indemnity obligations to members of the 'Company Group' by procuring certain policies of insurance.").

[26]Integrity squarely asserted that "the contractual insurance claims of Tesla and International against Integrity/Sea Eagle are unavailing when read and interpreted in context." R. Doc. No. 66-7, at 12. Neither International nor Tesla responded to Integrity's arguments regarding the insurance provisions in the MSA.

[27]International filed a motion for leave to file an amended complaint asserting claims against the insurers, which motion was denied by the U.S. Magistrate Judge. R. Doc. No. 55. International appealed that order. R. Doc. No. 57.

denial of motion for leave to amend as futile because "amending the complaint would not have enabled the Trust to defeat summary judgment"). Accordingly, it follows that International's appeal of the U.S. Magistrate Judge's denial of International's motion for leave to amend to assert claims against the insurers should be dismissed as moot and all claims by International and Tesla against the insurers should be dismissed with prejudice.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Integrity's and Sea Eagle's motions for summary judgment are **GRANTED**.

**IT IS FURTHER ORDERED** that International's and Tesla's cross-motions for summary judgment are **DENIED**.

**IT IS FURTHER ORDERED** that International's motion[28] for leave to file a reply is **GRANTED**.

**IT IS FURTHER ORDERED** that International's appeal of the U.S. Magistrate Judge's order is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that all claims asserted by Tesla and International against all other parties in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 11, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[28]R. Doc. No. 128.